## ELIJAH CANNON'S LESSEE v. WILLIAM COFFIN.

Court of Common Pleas.  Sussex.  April 25, 1801.

*Wilson's Red Book, 338.**

*Hall* and *Ridgely* for plaintiff.  *Cooper* and *Wilson* for defendant.

Defendant gave in evidence a warrant of resurvey granted by Mr. Penn in favor of Southy King, dated 18th March, 1776, on a tract called Hogquarter.  He then offered in evidence a certificate of survey and plot by Samuel Hearn and Rhoads Shankland for Abraham Betts as part of the lands surveyed under the said warrant to Southy King, certifying the 30th March, 1776, as the time of surveying and 10th November, 1793, as the time of making the plot, with the Commissioners' certificate in favor of Abraham Betts dated 1st October, 1794, and State Treasurer's receipt of the 1st November, 1794, for caution money, and Recorder's seal and certificate indorsed.  And proved the actual mensuration

---

* This case is also reported in *Rodney's Notes*, April 24, 1801.

to have been made by Rankin, a Deputy Surveyor, in 1776 of the lands in dispute and others adjoining for Southy King under the above mentioned warrant. Also that the whole survey had never been plotted and returned. And that it is usual to make separate returns of parts.

Plaintiff's counsel objected to the competency of the paper. There does not appear a conveyance from King to Betts, and a survey made for the latter is not admissible under a warrant to the former. This is also but a partial execution of the warrant, which is an entire thing, and the execution of it ought to appear together; the survey is an entire act, and cannot be divided. The Commissioners were not authorized to certify except to a legal claimant, and therefore unless a conveyance is shown from King to Betts, or some descent or transfer of title, he cannot hold lands under it, 2 Del.Laws 1176. The act of the Commissioners is not binding, for they are not a court, nor organized under Section 1, Article 6, of the Constitution. In *McCall v. Lockerman* the court doubted whether the Commissioners could say that certain land is vacant. And in [——] [1] *v. Catts* the Court of Appeals would not take upon themselves to decide facts, much less then can the Commissioners assume such powers.

Defendant's counsel. The objections offered to this paper would be proper before the jury, as to the legal effect of it, but they have no propriety when lodged against its competency. If a deed was shown from King to Betts, it would do away the principal objection, and shall it be said that the defect of one link in a chain of title shall destroy the competency of all subsequent productions? This would be to shut the door against the admission of circumstantial evidence and to repeal the law on the subject of presumptions, and it would be for the court to assume the whole business of deciding titles. Where a power is executed, or a special authority exercised, the authority must be shown. But these are the official acts of the Surveyor, Commissioners, State Treasurer, and Recorder duly authenticated, and therefore are competent to be read. This is no doubt a part of the whole measured survey, and if the residue had been protracted, certificated, or returned, the production of it would be proper, but none such exists or can be produced until taken from the marked lines. The Commissioners are directed by law to certify how much each holder may have a patent for under this species of survey, and this certificate and plot is according to the Act and the practice under it. It was of little importance to insist that the Commissioners appointed under the Land Office laws are not

---

[1] Blank in manuscript.

a court and have not power to decide whether lands be vacant or not, for whatsoever they do as Commissioners according to those Acts takes its validity from the laws under which they act. Their proceedings, being directed by statute, have the effect of legislative rather than judicial proceedings and ought to be read in evidence even with greater latitude than those of a court, because there only parties and privies could be bound. That the Commissioners have no judicial powers, and their acts therefore not conclusive, may be an argument as to the operation of the production, but not against its admission.

BOOTH, C. J. We consider the certificate as no evidence of title in Betts, and therefore not competent.

Defendant then offered a patent to A. Betts on same certificate.

*Ridgely.* Betts has obtained this patent without evidence of title, and it is without foundation and must also fall.

*Wilson.* This Court do not know what evidence was laid before the Commissioners. Here is a patent of the State of Delaware, and therefore is entitled to be read. Unless founded upon anterior title, it cannot affect a prior survey, yet it is competent evidence.

BOOTH, C. J. It is the opinion of the Court that this patent should not go in evidence to the jury.

Exceptions were written.

Plaintiff offered in evidence an arbitration bond and award between Southy King and Elijah Cannon calling for certain lines not protracted on the pretensions.

*Wilson* objected to it for that reason, which after argument was rejected by the Court.

Defendant's counsel. Plaintiff's title commencing under a warrant granted him to survey five thousand acres for the use [of] the Proprietary of Pennsylvania in the year 1766, he ought to have shown himself possessed within twenty, with the usual deduction. There is no alternative; either his title did not commence with his warrant, or he is barred by the Act of Limitations. If the former is the case, then the warrant to Southy King having been obtained, as the witnesses say, for this land, and having been acted under by measuring the ground, is an appropriation of the land in 1776, which was anterior to plaintiff's survey, which was made in 1783. And Southy King having been in possession until six or seven years ago, there is a good outstanding title in his heir at law, who has been proved now living, and

plaintiff cannot recover. By the Act of 1794, c. LVII, s. 5 [2 Del. Laws 1177], plaintiff's warrant being a proprietary warrant is declared to be no grant, nor is the survey made under it in a better situation, otherwise the Act will be in most cases defeated. The plaintiff can therefore have no title, his warrant and survey being no appropriation until he has paid the caution money and obtained a confirmation of it by patent; but, even in that event, his claim is posterior to King's, for the same section expressly provides that "no survey made in pursuance of such warrant shall be permitted to invalidate or in any wise call in question any person's title to any patent or other warrant" etc. Southy King's warrant, being indisputably within the location of plaintiff's warrant, is therefore protected and preferred by the Act of Assembly. By the same section it is enacted [that] this species of survey shall not take from another his improvement, and such appears to have been made by King, for the person who laid plaintiff's warrant in 1783 confesses he embraced part of the ground for which defense is taken in this action, at that time cleared and grubbed.

Plaintiff's counsel. If we can show defendant's warrant to have been invalid when plaintiff's survey was made, our survey could not invalidate it, and it is only in the case of a valid warrant that the second section can have an operation to protect it. A patent is an absolute grant, as a deed is, and passes the title; it is not so with every warrant. Although a located warrant is effectual to give a title in the first instance, a general warrant is not; it must be perfected by laying it and making a return. Of the latter kind is Southy King's warrant. A deed is ineffectual if fraudulent, though regularly sealed and delivered. A paper, though well executed, if illegal in any respect, conveys no title. In 1783 when plaintiff's survey was made, defendant's warrant being general, he had no title. It had the form but not the effect of a title paper, and therefore the Act cited could not protect its validity. Mr. Cannon claims but eighty-five and a half acres under a warrant which might have been laid on five thousand acres, it could not therefore have been one of those pernicious proprietary warrants, which the Act was designed to meet. We contend there has been no title under Southy King's warrant, and therefore defendant has shown no outstanding title. Nor are we affected by limitation, for our title commenced with our survey.

BOOTH, C. J. (Charge.) Gentlemen of the jury, the present action which you are now to decide is brought for the recovery of eighty-five acres. It is stated plaintiff must recover by the

strength of his own title, and it must appear he has such title to the property. The defendant says first: there is a title in a third person, and has shown a warrant granted in 1776 to Southy King, and insists the title is in his descendants—if you think so, plaintiff cannot recover. Second: that plaintiff has not been in possession within twenty years—if you think he has not had such possession, he cannot recover. Third: that the proprietary warrant under which plaintiff claims is not valid. Certainly a proprietary warrant cannot vacate another warrant, and you are to decide whether Southy King's warrant was such an one as was provided for by the Act of Assembly.

Verdict not guilty.